TAYLOR H. ARANA (IL Bar # 6329393)
230 S. Dearborn, Suite 3030
Chicago, IL 60604
Email: tarana@ftc.gov
Phone: (312) 960-5639

RACHEL F. SIFUENTES (CA Bar # 324403)
rsifuentes@ftc.gov

GUY G. WARD (IL Bar # 6217011)
gward@ftc.gov

*Attorneys for Petitioner*
*Federal Trade Commission*
*Appearing Pursuant to Civil L.R. 11-2*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Federal Trade Commission<br><br>Petitioner,<br><br>v.<br><br>Block, Inc.<br><br>Respondent. | Case No. 26-80299<br><br>**MEMORANDUM IN SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ i
I. Background ........ 2
A. The FTC Issued the CID to Investigate Block's "Square" Products. ........ 2
B. Block Has Failed to Comply with the CID Despite Receiving Numerous Extensions. 5
1. Organizational Charts and Personnel Directories (RFP 1): ........ 6
2. Consumer Loan Offers, Applications, and Complaints (RFPs 7, 17): ........ 7
3. Presentations to Management Committees and Investors (RFPs 8-9): ........ 7
4. Policies and Procedures (RFP 21): ........ 10
5. Identities of Persons with Knowledge (ROG 46): ........ 10
6. Unsworn Responses [ROGs XX, RWRs 1-4, and RFPs XX]: ........ 11
II. Legal Standard for Enforcement ........ 11
III. The FTC Satisfies the Conditions for Enforcement of the CID ........ 13
A. The CID is Properly Issued Under the Commission's Statutory Authority.. ........ 15
B. The Commission Followed the Procedural Requirements. ........ 15
C. The CID Seeks Relevant Information and Documents. ........ 16
D. Block Waived its Objections to the CID. ........ 17
E. The CID Is Not Overbroad or Unduly Burdensome. ........ 17
IV. Conclusion ........ 19

## TABLE OF AUTHORITIES

**Cases**

*Al Thani v. Hanke*,
No. 20 Civ. 4765, 2022 WL 1684271 (S.D.N.Y. May 26, 2022) ........ 9

*American Motors Corp. v. FTC*,
601 F.2d 1329 (6th Cir. 1979) ........ 12

*Blue Ribbon Quality Meats, Inc. v. FTC,*
560 F.2d 874 (8th Cir. 1977) ........ 15

*CFPB v. Block, Inc.*,
No. 22-mc-80214-SK, 2022 WL 23103836 (N.D. Cal. Nov. 30, 2022) ........ 11

*CFPB v. Great Plains Lending, LLC*,
No. CV-14-2090-MWF-(PLAx), 2014 WL 12685941 (C.D. Cal. May 27, 2014) ........ 13

*Chabot v. Walgreens Boots All., Inc.*,
No. 1:18-cv-2118, 2019 WL 13162432 (M.D. Pa. Aug. 16, 2019) ........ 9

*Doe 1 v. Nielsen*,
No. 18-cv-2349, 2019 WL 2266622 (N.D. Cal. May 28, 2019) ........ 9

*Dole v. Trinity Industries, Inc.*,
904 F.2d 867 (3d Cir. 1990) ........ 16

*EEOC v. Bay Shipbuilding Corp.*,
668 F.2d 304 (7th Cir. 1981) ........ 18

*EEOC v. Fed. Exp. Corp.*,
558 F.ed 842 (9th Cir. 2009) ........ 2, 12, 16

*EEOC v. McLane Co.*,
804 F.3d 1051 (9th Cir. 2015) ........ 13, 17

*Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*,
No. 12-cv-787, 2017 WL 3624262 (D.N.J. Apr. 26, 2017) ........ 10

*FDIC v. Garner*,
126 F.3d 1138 (9th Cir. 1997)........................................................................ 13, 18

*FTC v. American Buyers Network, Inc.*,
Civ. A. No. 91-B-1158, 1991 WL 214163 (D. Colo. Aug. 19, 1991)...................................... 13

*FTC v. Dinamica Financiera LLC*,
No. CV 08-04649 MMM (PJWx), 2008 WL 11342612 (C.D. Cal. Sept. 22, 2008)................ 13

*FTC v. Invention Submission Corp.*,
965 F.2d 1086 (D.C. Cir. 1992) ........................................................................ 16

*FTC v. Ken Roberts Co.*,
276 F.3d 583 (D.C. Cir 2001) ........................................................................ 15

*FTC v. O'Connell Assoc., Inc.*,
828 F. Supp. 165 (E.D.N.Y. 1993)........................................................................ 1, 12

*FTC v. Shaffner*,
626 F.2d 32 (7th Cir. 1980)........................................................................ 18

*FTC v. Texaco, Inc.*,
555 F.2d 862 (D.C. Cir. 1977) ........................................................................ 13, 17, 18

*FTC v. Tracers Info. Specialists, Inc.*,
No. 8:16-MC-18TGW, 2016 Wl 3896840 (M.D. Fla. Jun. 10, 2016) ..................................... 17

*FTC v. XCast Labs, Inc.*
No. Misc 21-1026-MWFMRWX, 2021 WL 6297885 (C.D. Cal. Dec. 9, 2021) ......... 12, 13, 17

*In re the Civil Investigative Demand Petition of: Block, Inc.*,
No. 21-2-04057-4 SEA, 2023 WL 12333076 (Wash. Sup. Ct. May 23, 2023)........................ 11

*Integrity Advance, LLC v. CFPB*,
48 F.4th 1161 (10th Cir. 2022) ........................................................................ 1

*Karnoski v. Trump*,
No. C17-1297, 2020 WL 2736961 (W.D. Wash. Mar. 4, 2020)................................................ 9

*Orion Power Midwest, L.P. v. Am. Coal Sales Co.*,
No. 05-cv-555, 2008 WL 4462301 (W.D. Pa. Sept. 30, 2008) ........ 9

*QueerDoc, PLLC v. DOJ*,
187 F4th 1112 (9th Cir. 2026) ........ 13, 14, 20

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Board*,
878 F.2d 875 (5th Cir. 1989) ........ 16

*SEC v. Brigadoon Scotch Distributing Co.*,
480 F.2d 1047 (2d Cir. 1973) ........ 17

*United States v. ASG Solutions Corp.*
No. 17CV1224 L (BGS), 2018 Wl 1418023 (S.D. Cal. Mar. 22, 2018) ........ 11

*United States v. Firestone Tire & Rubber Co.,*
455 F. Supp. 1072 (D.D.C. 1978) ........ 18

*United States v. Glaxo Group Ltd.*,
302 F. Supp. 1 (D.D.C. 1969) ........ 10

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) ........ 12, 14, 17

*United States v. Oncology Services Corp*.,
60 F.3d 1015 (3d Cir. 1995) ........ 16

*Walsh v. Alight Sols. LLC*,
44 Fth 716 (7th Cir. 2022) ........ 13

**Statutes**

15 U.S.C. § 45(a) ........ 1, 3, 14

15 U.S.C. § 1311 ........ 1

15 U.S.C. § 1681 ........ 1, 3, 14

15 U.S.C. § 57b-1(c) ........ 11, 14, 15

15 U.S.C. § 57b-1(f) .................... 2, 12
15 U.S.C. § 6821.................... 1, 3, 14
15 U.S.C. § 6822(a) .................... 14
15 U.S.C. §§ 41-58 .................... 14

The Federal Trade Commission ("FTC" or "Commission") petitions this Court to enforce a civil investigative demand ("CID") issued to Block, Inc. ("Block").[1] The CID requires Block to produce documents and information related to payment processing and other services that it offers to business owners, including small business owners, on its "Square" platform. *See* Declaration of Taylor H. Arana ("Decl.") ¶ 4. Among other conduct, the FTC is investigating whether Block is violating the FTC Act, 15 U.SC. § 45(a) , and the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6821 , by deceiving consumers into paying for credit-card processing and other services. Decl. ¶ 4. The FTC is also investigating whether Block fails to comply with the requirements of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), with regard to furnishing or obtaining consumer reports for underwriting and approving users for its payment processing services, loans, or other financial products. Decl. ¶ 4.

The Commission issued the CID after receiving over 1,500 complaints that Block has frozen or deactivated Square users' access to their payment processing accounts without notice or remedy and prevented users from transferring funds to external bank accounts. Decl. ¶ 8. In response to the CID, Block submitted partial, unsworn interrogatory responses, and withheld extensive responsive information. *Id.* ¶ 22. Among other deficiencies, Block has failed to produce (1) organizational charts and personnel directories; (2) documents showing the representations and disclosures Block makes to consumers when they apply for loans; and (3) corporate policies and procedures. *Id.* Block has also improperly withheld relevant information regarding account freezes, consumer complaints, customer support, and risk management. *Id.* ¶¶ 51-59.

After being served the CID in January 2026, Block requested additional time to respond, and the FTC twice agreed to extend Block's deadline to comply, ultimately extending it nearly four months—from March 2, 2026, to June 19, 2026. Decl. ¶¶ 11-19. Despite substantial meet-and

---

[1] "CIDs work like civil subpoenas, and executive-branch departments or agencies commonly issue them in their investigations." *Integrity Advance, LLC v. CFPB,* 48 F.4th 1161, 1165 n.2 (10th Cir. 2022). Congress modeled the FTC's CID authority on the Antitrust Civil Process Act, 15 U.S.C. § 1311, which grants similar authority to the U.S. Department of Justice. *See FTC v. O'Connell Assoc., Inc.*, 828 F. Supp. 165, 169 (E.D.N.Y. 1993).

confer efforts by the FTC to obtain full compliance—providing detailed lists of the deficiencies and allowing Block time beyond June 19—Block still has not complied with the CID. *Id.* ¶¶21-25.

Under the FTC Act and the agency's Rules of Practice, a CID recipient must timely raise any factual or legal objections to the CID in an administrative petition to limit or quash. *See* 15 U.S.C. § 57b-1(f); 16 C.F.R. § 2.10. Block filed no such petition with the Commission here. Decl. ¶ 7. Block also admits that it still withheld responsive materials to *multiple* specifications after the FTC's extended deadline and Block's own promised dates for completing its delinquent responses have long since passed. *See, e.g. id.* ¶ 72. Thus, the Commission is entitled to an order directing Block to show cause why it has failed to comply with the CID. And because the Commission has authority to conduct this investigation, followed all procedural requirements, and seeks information reasonably relevant to the investigation, the Court should also enter an order enforcing the CID and requiring production. *See, e.g., EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009).

For these reasons, the FTC respectfully requests that this Court promptly enter an order requiring Block to fully comply with the CID's (1) Requests for Production 1, 7-9, 17 and 21; (2) Interrogatory 46; and (3) requirements to both verify the truth of Block's completed interrogatories, and certify the completeness of its responses to completed document and data requests by a date certain, or to show cause why Block should not be compelled to comply. Because any delay in issuing a show-cause order would harm the Commission's ongoing investigation, the FTC respectfully requests that the order be issued promptly.

## I. Background

### A. The FTC Issued the CID to Investigate Block's "Square" Products.

Block is a multi-billion-dollar global corporation that self-identifies primarily as a technology company. Decl. ¶ 3. It has two primary "ecosystems": Cash App, which is a mobile payment app for consumers, and Square, which is a merchant-payment-processing platform. *Id.* In 2025, the Commission initiated an investigation into Square, focusing on potential violations of

laws enforced by the FTC, including the FTC Act's prohibition on unfair or deceptive business practices, 15 U.S.C. § 45(a), the GLB Act's prohibition on obtaining consumer financial information under false pretenses, 15 U.S.C. § 6821, and the FCRA's requirements when furnishing or obtaining consumer reports for underwriting and approving users for payment processing services, loans, and financial products, 15 U.S.C. § 1681 *et seq*. Decl. ¶¶ 4, 8.

The Commission began its investigation after receiving more than 1,500 consumer complaints alleging that Block was wrongfully withholding the proceeds of business transactions processed through the Square platform. Decl. ¶ 8. Square accountholders report, *inter alia*, that Block has (1) frozen or deactivated their payment processing accounts due to purported underwriting risk flags; (2) failed to restore access even after the accountholders provided the materials Block requested to resolve the issue; (3) prevented accountholders from transferring funds to external bank accounts; and (4) refused to provide adequate customer service to resolve concerns. *Id.* These account freezes may also impact Square users' ability to make use of other Square products, such as loans, lines of credit, or other financial tools. *Id*. Together, the complaints the FTC has received allege that Block has wrongfully withheld at least $2.5 million of Square users' payment proceeds since 2022. *Id.* Given the FTC's experience that only a small fraction of injured consumers complain to the government, these losses may be just the tip of the iceberg.

Many consumers have reported that their businesses were irreparably damaged because they unexpectedly could not access the funds in their Square accounts. For example, a food truck operator reported that Block deactivated her[2] Square account during a festival after she took her first order. Decl. ¶ 9. She contacted Block immediately and was told that she could continue using her account to collect payments, but would have to re-verify her identity before Block would allow her to access the proceeds from the orders. *Id.* The food truck operator sold hundreds of orders at the festival, but Block never restored access to her Square account, even after she provided the

[2] Consumer complaints have been anonymized. For the purposes of this memorandum, the Commission will alternate using the pronouns "she" and "he."

requested identity-verification materials. *Id.* The food truck operator reported that Block wrongfully withheld about $2,000 of her money. *Id.* Another consumer, a roofer, set up a Square account to allow customers to pay by credit card. *Id.* ¶ 10. He accepted a down payment of $35,500 to replace a roof for a homeowner and he needed the down payment to purchase the materials necessary to begin construction. *Id.* Before he could withdraw the funds, Block froze his Square account, preventing him from buying the project materials. *Id.* The roofer could not reach a live customer service agent to resolve the issue. Because the roofer could not timely begin construction, the homeowner threatened legal action. *Id.*

On January 29, 2026, the Commission served a CID to Block as part of its investigation into these and other related practices. Decl. ¶¶ 4, 12. The "Subject of Investigation," identified in the CID (included in full in the accompanying Petition, ¶ 14, and Decl. ¶ 4) informed Block that the FTC sought information sufficient to determine whether the company engaged in unfair or deceptive practices in connection with: (1) its payments products and services, including regarding the availability of funds and dispute resolution; (2) its obtaining or disclosure of customer information of a financial institution; or (3) its furnishing or obtaining of consumer reports. As relevant to this Petition, the CID included interrogatories ("ROGs") requesting information concerning (1) Block's organizational structure, policies, and procedures related to Square account freezes and deactivations; and (2) the representations and disclosures that Block makes to Square users at onboarding and when offering add-on products like merchant loans or cash advances (which may be cut off when Block freezes or deactivates the associated Square account). *See* Decl. Ex. A. at 2-13. The CID's requests for production ("RFPs") sought documents including Block's organizational charts, policies, and procedures, and copies of Square's ads and consumer interfaces. *Id.* at 17-21. Finally, the CID included four Requests for Written Reports (RWRs) seeking Square transactional data. *Id.* at 13-16.

[redacted]

[redacted]

**B. Block Has Failed to Comply with the CID Despite Numerous Extensions.**

[redacted]. Block, however, never raised these objections in a timely administrative petition to limit or quash the CID, as required by statute and Commission rules. *Id.* ¶¶ 6-7.

[redacted]

Block failed to produce a complete CID response by this deadline. Decl. ¶ 25. As relevant to this enforcement petition, Block's remaining deficiencies include its failures to produce complete responses to the following six CID requirements, which this Petition seeks to enforce.

**1. Organizational Charts and Personnel Directories (RFP 1):**

Eight months into the investigation, Block still has not fully responded to RFP 1, which seeks "each different version" of the company's organizational charts, leadership directories, and personnel directories since December 2022. *See* Decl. ¶¶ 26-41. The FTC needs this information to identify the departments, custodians, and potential witnesses for its investigation. *Id.* ¶26.

[redacted]

[redacted]

FTC staff has requested that Block produce similar personnel lists for the entire time period covered by the CID, and that Block include full names for the listed employees, but Block has not provided these lists. Decl. ¶ 41. Given Block's persistently deficient responses to this basic request,

a court order is necessary to ensure Block produces a complete response.

**2. Consumer Loan Offers, Applications, and Complaints (RFPs 7, 17):**

Despite FTC staff's requests, Block has not produced materials sufficient to show either (1) consumer-facing content, representations, and disclosures related to Square's loans, lines-of-credit, or merchant cash advances (RFP 7), or (2) consumer complaints related to these lending products (RFP 17). Decl. ¶¶ 42-50. The former relates to how Block markets its products, what representations it makes, and what consumers see when signing up for products, and the latter is relevant to whether consumers perceive that Block has lived up to its disclosures.

**3. Presentations to Management Committees and Investors (RFPs 8-9):**

Together, RFPs 8-9 request documents related to presentations to investors and management committees, and boards of directors related to, among other topics, deactivating, freezing, or otherwise restricting Square accounts. Decl. ¶ 51. Block has failed to produce complete responses to these RFPs, [redacted] For example, **Figure 1** below is [redacted]

**Figure 1.**

[redacted]

[redacted], Block produce[redacted] shown below in **Figure 2**, [redacted]

**Figure 2.**

[redacted]

In numerous other instances, as shown below in **Figures 3-4**, Block [redacted]

**Figure 3.**

[redacted]

**Figure 4.**

[redacted]

*Id.* ¶¶ 53-54. Such redactions are improper and render these productions deficient. Courts regularly hold that it is improper for a party to redact non-responsive material from otherwise relevant documents. *See, e.g.*, *Karnoski v. Trump*, No. C17-1297, 2020 WL 2736961, at *1 (W.D. Wash. Mar. 4, 2020) ("The Federal Rules of Evidence favor the complete production of non-privileged evidence if some portion of the evidence is deemed responsive."); *Doe 1 v. Nielsen*, No. 18-cv-2349, 2019 WL 2266622, at *3 (N.D. Cal. May 28, 2019) (generally, a document "must be produced as it is kept in the usual course of business and may not be altered to eliminate non-responsive information simply because the producing party believes the non-responsive information is not relevant to a claim or defense"); *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 05-cv-555, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008) (a party may not "scrub responsive documents of non-responsive information"). Courts do not "permit the producing party to essentially unilaterally redact otherwise responsive discovery," *Karnoski*, 2020 WL 2736961, at *2, or remove material that would put relevant information in context, *see Al Thani v. Hanke*, No. 20 Civ. 4765, 2022 WL 1684271, at *2 (S.D.N.Y. May 26, 2022) ("irrelevant information

within a document that contains relevant information may be highly useful to providing context for the relevant information." (internal quotation marks and citation omitted)); *see also Chabot v. Walgreens Boots All., Inc.*, No. 1:18-cv-2118, 2019 WL 13162432, at *2 (M.D. Pa. Aug. 16, 2019) ("Courts are hesitant to permit such redaction based on one party's position that such information is not relevant or responsive where that information appears in a document that otherwise contains relevant or responsive information."); *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 12-cv-787, 2017 WL 3624262, at *3–4 (D.N.J. Apr. 26, 2017) (unilateral redactions based on one party's subjective view of relevancy are improper; collecting cases), *report and recommendation adopted*, 2017 WL 3668391 (D.N.J. Aug. 23, 2017).

**4. Policies and Procedures (RFP 21):**

RFP 21 requests Block's policies and procedures related to, among other topics, its practices for freezing and deactivating Square accounts, responding to consumer complaints, and obtaining credit reports. Decl. ¶ 60. Block has failed to produce a complete response to this request, including by withholding copies of relevant, responsive documents Block identified in responses to other ROGs. *Id.* ¶¶ 61-63. In particular, [redacted]

**5. Identities of Persons with Knowledge (ROG 46):**

FTC staff requested that Block identify each person who prepared, reviewed, or supervised Block's CID responses, to help identify custodians and potential witnesses. [redacted] This response is incomplete, because it does not identify the Block employees that counsel interviewed to prepare the CID responses. *See United States v. Glaxo Group Ltd.,* 302 F. Supp. 1, 17 (D.D.C. 1969), *judgment rev'd on other grounds*, 410 U.S. 52, 93 S. Ct. 861, 35 L. Ed. 2d 104 (1973) (work product doctrine does not "shield against discovery … the persons from whom" an attorney learns facts, even if the communications, themselves, are confidential). [redacted]

[redacted] but Block has not provided it.

**6. Unsworn Responses:**

[redacted], Block has neither verified the truth of any of its ROG responses, as required by 15 U.S.C. § 57b-1(c)(13), nor has Block certified that its responses to any RFP is complete, as required by 15 U.S.C. § 57b-1(c)(11). The FTC, therefore, seeks an enforcement order that requires Block to both provide verifications swearing to the truth of its ROG responses and certify the completeness of all responses. *See e.g. United States v. ASG Solutions Corp.*, No. 17CV1224 L (BGS), 2018 WL 1418023, at *6 (S.D. Cal., Mar. 22, 2018) (enforcing CID requiring certification that respondent provided all responsive materials within its "possession, custody, or control"), *report and recommendation adopted*, 2018 WL 3471405 (S.D. Cal. Jul. 18, 2018).

Further detail on Block's compliance deficiencies, and the Commission's efforts to help Block complete its responses to CID Requests, is in the declaration and exhibits filed in support of the FTC's petition.[3] This case is the third petition filed by a law enforcement agency against Block to enforce a civil investigative demand since 2021.[4]

## II. Legal Standard for Enforcement

The Ninth Circuit has held that the "scope of the judicial inquiry in an … agency subpoena enforcement proceeding is quite narrow," and that the role of a district court is "strictly limited." *Fed. Exp. Corp.*, 558 F.3d at 848 (internal quote marks and citations omitted). The court considers

---

[3] [redacted]. Although we currently seek enforcement regarding only the six deficiencies described above, we reserve our right to seek enforcement regarding the additional deficiencies described in the declaration and correspondence with Block, should Block persist in its refusals to comply.

[4] *See CFPB v. Block, Inc.*, No. 22-mc-80214-SK, 2022 WL 23103836, at *4 (N.D. Cal. Nov. 30, 2022) (granting Bureau's petition to enforce two CIDs issued to Block); *In re the Civil Investigative Demand Petition of: Block, Inc.*, No. 21-2-04057-4 SEA, 2023 WL 12333076, at *3-4 (Wash. Sup. Ct. May 23, 2023) (granting Washington Attorney General's petition to enforce a CID against Block).

whether (1) Congress has granted the authority to investigate; (2) procedural requirements have been followed; and (3) the evidence is relevant and material to the investigation. *Id; see also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). If these requirements are met, the court "must enforce" an administrative subpoena. *Fed Exp. Corp*., 558 F.3d at 854. The Ninth Circuit recently reaffirmed this standard in *QueerDoc, PLLC v. DOJ*, 187 F.4th 1112, 1130-31, 1136 (9th Cir. 2026).

In a CID enforcement matter, a respondent may only raise objections that it has already raised and exhausted through the administrative process; any other objections are waived. *See* 15 U.S.C. § 57b-1(f); 16 C.F.R. § 2.10 (establishing administrative process for petitions to quash or narrow FTC CIDs); *see, e.g. Morton Salt*, 338 U.S. at 653–54 (rejecting challenge to FTC's request for compliance reports and records where respondents failed to exhaust administrative remedies); *American Motors Corp. v. FTC*, 601 F.2d 1329, 1339-40 (6th Cir. 1979) (ordering dismissal of action challenging FTC subpoenas where plaintiffs failed to exhaust administrative remedies); *FTC v. XCast Labs, Inc.*, No. Misc 21-1026-MWFMRWX, 2021 WL 6297885, at *3 (C.D. Cal. Dec. 9, 2021) ("a party must present and exhaust" its objections to an FTC CID "before coming to court") (citing cases), *report and recommendation adopted,* 2022 WL 60527 (C.D. Cal. Jan. 6, 2022); *O'Connell Assoc.,* , 828 F. Supp. at 168-69 (exhaustion requirement applies in FTC-initiated enforcement proceedings). This requirement exists to provide respondents with an opportunity "to present evidence" challenging the scope and burden of responding to the CID, and to provide the FTC with an "opportunity to disclaim any inadvertent excesses or to justify [its] demands in the record" prior to filing an enforcement action. *Morton Salt*, 338 U.S. at 653–54. Without this administrative process, a court cannot assess "the measure of [a respondent's] grievance." *Id.* at 654. As a result, a CID recipient who has failed to exhaust its administrative remedy by petitioning to quash or narrow a CID waives the ability to present the objection later. *XCast Labs*, 2021 WL 6297885, at *3 (CID objections not raised before FTC are waived in court).

Even if a CID recipient properly preserves its objections, courts limit CID enforcement

only if "the objecting party shows that the subpoena is overbroad or that compliance would be unduly burdensome," *EEOC v. McLane Co.*, 804 F.3d 1051, 1056 (9th Cir. 2015), *vacated on other grounds*, 581 U.S. 72 (2017), a standard "not easily met." *CFPB v. Great Plains Lending, LLC*, No. CV-14-2090-MWF-(PLAx), 2014 WL 12685941, at *17 (C.D. Cal. May 27, 2014) (internal quote marks and citation omitted), *aff'd,* 846 F.3d 1049 (9th Cir. 2017). A CID recipient is not unduly burdened unless it can show that "'compliance threatens to unduly disrupt or seriously hinder normal operations of [the recipient's] business.'" *QueerDoc,* 187 F.4th at 1146 (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977)).

Finally, enforcement proceedings are "designed to be summary in nature," *Walsh v. Alight Sols. LLC*, 44 F.4th 716, 722 (7th Cir. 2022) (citation omitted), to protect "the important governmental interest in the expeditious investigation of possible unlawful activity," *Texaco*, 555 F.2d at 872. To ensure the summary nature of enforcement proceedings, the government is authorized to rely on affidavits or declarations to demonstrate that the requirements for enforcement of an administrative subpoena have been satisfied. *XCast Labs, Inc.*, 2021 WL 6297885 at *1 (citing *FDIC v. Garner*, 126 F.3d 1138, 1143 (9th Cir. 1997)). When a petition fulfills the statutory requirements, show-cause orders frequently are issued within days after the Commission files an enforcement petition. *See, e.g., FTC v. American Buyers Network, Inc.*, Civ. A. No. 91-B-1158, 1991 WL 214163, at *3 (D. Colo. Aug. 19, 1991) ("Subpoena enforcement actions should proceed with dispatch so that the underlying investigation is not unduly disrupted"); *FTC v. Dinamica Financiera LLC,* No. CV 08-04649 MMM (PJWx), 2008 WL 11342612, at *2 (C.D. Cal. Sept. 22, 2008) (show-cause order issued the day after petition was filed).

## III. The FTC Satisfies the Conditions for Enforcement of the CID

The Court should enter an order enforcing the CID for three reasons. First, the FTC satisfies the three conditions for enforcement of the CID: it is authorized to conduct the investigation, it followed the procedural requirements, and the materials sought are reasonably relevant to the investigation. Second, Block waived any objections to the CID by failing to file an administrative

petition to limit or quash the CID. Third, Block cannot show that the discrete CID provisions the FTC seeks to enforce with this Petition are overbroad or unduly burdensome.

**A. The CID is Properly Issued Under the Commission's Statutory Authority.**

The Commission's investigation of Block and the related CID indisputably fall within the agency's statutory authority, specifically: Section 5 of the FTC Act, the Gramm-Leach-Bliley Act ("GLB Act"), and the Fair Credit Reporting Act ("FCRA"). Section 5(a) of the FTC Act prohibits unfair or deceptive acts or practices in or affecting commerce, 15 U.S.C. § 45(a), the GLB Act prohibits obtaining consumers' financial information under false pretenses, 15 U.S.C. § 6821, and the FCRA establishes requirements for furnishing and obtaining consumer reports, 15 U.S.C. § 1681 *et seq*.

The FTC has authority to enforce provisions of the FTC Act, 15 U.S.C. §§ 41-58, which authorizes the FTC to investigate whether a person (including a business entity) is or has been engaged in unfair or deceptive acts or practices in or affecting commerce, and to issue CIDs to any person who may have documents or information relevant to such an investigation. 15 U.S.C. § 57b-1(c)(1). Similarly, the GLB Act and the FCRA authorize the FTC to enforce requirements of those statutes with the functions and powers provided under the FTC Act. 15 U.S.C. §§ 1681s, 6822(a). The FTC may "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642-43.

Here, the CID easily satisfies this first enforcement criterion because it is authorized by statute. Block offers payment processing services and financial products and makes claims to consumers about these products and services. Decl. ¶ 3. Examining the veracity and legality of these claims, and potentially unfair practices, falls squarely within the Commission's consumer protection enforcement authority under the FTC Act, 15 U.S.C. § 45(a), (n). Block also obtains financial information from consumers, and consumer reports when onboarding its users, Decl. ¶ 3, and investigating Block's compliance with the GLB Act and the FCRA is unquestionably within the FTC's statutory authority under both statutes as well as the FTC Act.

[redacted] this argument is baseless: The Commission has the power to issue and enforce civil investigative demands to banks (and others) beyond its enforcement authority. *See, e.g., FTC v. Ken Roberts Co.*, 276 F.3d 583, 587-93 (D.C. Cir. 2001) (collecting cases and explaining that subpoena power is not limited to parties within an agency's jurisdiction or covered by the statute it administers); *Blue Ribbon Quality Meats, Inc. v. FTC*, 560 F.2d 874, 876 (8th Cir. 1977) ("the investigatory power granted the FTC … reaches further than [its] regulatory power"). Here, the CID was issued to investigate the lawfulness of Block's non-banking conduct selling the products and services at issue. Decl. ¶¶ 42-50.

**B. The Commission Followed the Procedural Requirements.**

The CID was also issued in compliance with applicable procedural requirements of the FTC Act and its implementing rules. 15 U.S.C. § 57b-1(c); 16 C.F.R. § 2.7. Under the FTC Act, a CID must (1) identify the nature of the conduct being investigated and the provision of law applicable to such violation; (2) describe with "definiteness and certainty" the types of documentary material to be produced and the questions to be answered; (3) prescribe a return date that provides the respondent a "reasonable period of time" to respond to the requests; and (4) identify the custodian to whom the responses must be submitted. 15 U.S.C. § 57b-1(c). And under 16 C.F.R. § 2.7(a), "[t]he Commission or any Commissioner" may issue a CID pursuant to a Commission resolution authorizing the use of compulsory process.

The CID satisfies each of these requirements. The schedule accompanying the CID describes the nature of the investigation and identifies the laws at issue. Decl. ¶ 4. It also describes with "definiteness and certainty" the information and documents sought in 47 interrogatories, 21 document requests, and four requests for written reports, along with detailed instructions and definitions. *Id.* ¶¶ 5-6. The CID also specifies the dates for responding to specific requests, *id.* ¶ 11, and the custodian to whom the responses must be sent, *id.* ¶5, and the CID was validly signed by

FTC Chairman Andrew Ferguson acting pursuant to four Resolutions approved by the full Commission authorizing the use of compulsory process, *id.* ¶ 4.

**C. The CID Seeks Relevant Information and Documents.**

The information and documents sought by the CID are reasonably relevant to the FTC's investigation. The relevancy requirement is "determined in terms of the investigation rather than in terms of evidentiary relevance," and it is "generously construed to afford … access to virtually any material that might cast light on the allegations" against Block. *Fed. Exp Corp.*, 558 F.3d at 854 (cleaned up). A CID must be enforced unless the evidence sought is "plainly incompetent or irrelevant to any lawful purpose of the agency." *Id.* (quotation omitted). The agency's appraisal of relevancy "must be accepted so long as it is not obviously wrong." *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) (internal quotation marks and citation omitted). *See also United States v. Oncology Services Corp*., 60 F.3d 1015, 1020 (3d Cir. 1995) ("'Reasonably relevant' means merely 'that the information must be relevant to *some* (any) inquiry that the [agency] is authorized to undertake.'") (quoting *Dole v. Trinity Industries, Inc.*, 904 F.2d 867, 872 (3d Cir. 1990)); *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Board*, 878 F.2d 875, 882 (5th Cir. 1989) (as long as the material requested "touches a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant.") (internal quotation marks and citation omitted).

The CID requests that the FTC seeks to enforce here are relevant to assessing compliance with the FTC Act, the GLB Act, and the FCRA. RFPs 8-9 and 21 request information related to Block's reports, policies, and practices related to freezing and deactivating Square accounts, responding to consumer complaints, and obtaining credit reports. Decl. ¶¶ 51, 60. RFPs 7 and 17 seek information about the representations Block makes to consumers when offering small business loans, and consumer complaints regarding those loans. *Id.* ¶¶ 44-45. RFP 1 and ROG 46 both seek information sufficient to determine the custodians and potential witnesses for these business functions. *Id.* ¶¶ 26, 68. Meanwhile, the CID's requirements to verify Block's completed

ROG responses, and to certify Block's completed requests, *id.* ¶71, ensure that Block's productions are candid, complete, and can be relied on. Courts have recognized that subpoenas seeking such information are appropriate in comprehensive investigations. *Texaco*, 555 F.2d at 882.

**D. Block Waived its Objections to the CID.**

Block waived its objections to the CID by failing to exhaust its administrative remedies. Block could have filed a petition to limit or quash the CID with the Commission "set[ting] forth all assertions of protected status or other factual and legal objections to the [CID]." Decl. Ex. A at 23 (citing 16 C.F.R. § 2.10(a)(1)–(2)), but Block did not. Its petition-to-quash deadline was February 18, 2026, and it neither filed a petition nor sought an extension to file any petition by that date. Decl. ¶ 7. Because the "exhaustion requirement applies to FTC investigatory proceedings," Block's failure to file an administrative petition "bars its assertion of substantive objections to the CID in court." *FTC v. Tracers Info. Specialists, Inc.*, No. 8:16-MC-18TGW, 2016 WL 3896840, at *4, 6 (M.D. Fla. Jun. 10, 2016) (congressional intent "would be minimized, if not rendered meaningless" if "a CID recipient could circumvent the rigorous requirements and time limitations set forth in the petition to quash or limit"). *See also supra*, 11-13; *Morton Salt*, 338 U.S. at 653-54; *XCast Labs, Inc.*, 2021 WL 6297885, at *3. Since Block waived its objections, this Court need not go further.

**E. The CID Is Not Overbroad or Unduly Burdensome.**

Even if Block had not waived its objections to the CID, Block cannot show that the CID provisions being enforced are overbroad or unduly burdensome. *See McLane Co.*, 804 F.3d at 1056 (when threshold conditions for enforcement of administrative subpoena are met, burden shifts to objecting party to show the subpoena is overbroad or unduly burdensome).

Where the agency's inquiry "is authorized by law and the materials sought are relevant to the inquiry," the burden of compliance will rarely be considered unreasonable. *SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973). Because "[s]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate

inquiry and the public interest," courts "have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *Texaco, Inc.*, 555 F.2d at 882. A CID recipient must show undue burden "on a request-by-request basis" with "objective and specific evidence, such as 'the number of files involved, the number of estimated work hours required to effect compliance, [or] the estimated costs of compliance.'" *QueerDoc*, 187 F.4th at 1147 (quoting *FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980)); *see also Garner*, 126 F.3d at 1145-46 (subpoena recipient has burden to "prove[]" requests are unduly burdensome) (citation omitted).

Block provided no such evidence to the Commission in a petition to quash, Decl. ¶ 7, which bars it from attempting to show undue burden now. *See EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir. 1981) (rejecting argument that it would be unduly burdensome to comply with administrative subpoena when respondent "had ample opportunity" to prove undue burden before EEOC, but made only a "conclusionary assertion to that effect").

In any event, Block has no grounds to claim undue burden. To correct its deficient responses to RFP 1, 8 and 9, Block need only reproduce documents in their unredacted forms and ensure that it has fully responded to the requests. Regarding RFPs 7, 17 and 21 (seeking, respectively, copies of consumer interfaces, and relevant policies and procedures), Block already has produced—without objection—similar documents on other topics. *See*, *e.g.*, Decl. ¶¶ 48-50, 62-63. Finally, responding to ROG 46 simply requires disclosing the Block employees who contributed to Block's responses, and the certification requirement asks only that Block ensure that proper parties verify or certify Block's responses. *Id.* ¶ 71. Block cannot demonstrate that completing its responses to these requests is an undue burden. *See United States v. Firestone Tire & Rubber Co.*, 455 F. Supp. 1072, 1084 (D.D.C. 1978) (rejecting argument it would be unduly burdensome to require respondent "to produce information which it has known for six months was being sought").

## IV. Conclusion

For these reasons, Petitioner FTC respectfully requests that the Court grant its petition and issue the attached order requiring Respondent Block to comply with the CID or to show cause as to why it has failed to do so.

Dated: October 7, 2026

Respectfully submitted,

LUCAS CROSLOW
General Counsel

/s/ Taylor H. Arana

TAYLOR H. ARANA (IL Bar # 6329393)

RACHEL F. SIFUENTES (CA Bar # 324403)

GUY G. WARD (IL Bar # 6217011)

Federal Trade Commission-Midwest Regional Office
230 S. Dearborn,
Chicago, IL 60604
Phone: (312) 960-5639
Email(s): tarana@ftc.gov
rsifuentes@ftc.gov
gward@ftc.gov

*Attorneys for Petitioner Federal Trade Commission*